**SO ORDERED.**

**SIGNED this 2 day of May, 2016.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# NEW BERN DIVISION

IN RE:                                                            CASE NO. 14-07134-5-DMW

**REUBEN SAMUEL ROYAL**
**RACHEL LYNN ROYAL**                                             CHAPTER 13

       **DEBTORS**

## ORDER DENYING MOTION TO SURRENDER VEHICLE AND MODIFY PLAN

This matter comes before the court upon the Amended Motion to Allow Surrender of Motor Vehicle and Modification of Chapter 13 Plan ("Motion to Modify") filed by Reuben Samuel Royal and Rachel Lynn Royal ("Debtors") on February 12, 2016 and the Objection to Amended Motion to Allow Surrender of Motor Vehicle and Modification of Chapter 13 Plan filed by Home Credit Corporation ("Home Credit") on February 19, 2016. The court conducted a hearing ("Hearing") on March 17, 2016 in New Bern, North Carolina. Roger A. Moore, Esq. appeared for the Debtors, William F. Hill, Esq. appeared for Home Credit, and Chapter 13 trustee Joseph A. Bledsoe III, Esq. ("Trustee") appeared on his own behalf. Based upon the evidence presented, filed memoranda of law, and arguments of counsel, the court makes the following findings of fact and conclusions of law:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2. The Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on December 9, 2014 ("Petition Date"), and the court appointed the Trustee to administer the case pursuant to 11 U.S.C. § 1302.

3. On June 6, 2014, the Debtors and Home Credit executed a Retail Installment Contract ("Note") for the Debtors' purchase of a 2001 Mitsubishi Eclipse ("Collateral") for the principal amount of $4,350.00. The Note reflects that at the time of purchase, the Collateral's odometer registered 144,516 miles. The Note is properly secured by a purchase money security interest in the Collateral, with perfection noted upon the certificate of title. The Note provides for the Debtors to make monthly payments to Home Credit in the amount of $240.99 for a period of twenty-four (24) months.

4. Pursuant to a Proof of Claim filed by Home Credit on January 22, 2015, the balance due on the Note on the Petition Date was $4,263.80.

5. The Debtors' Chapter 13 plan ("Plan"), confirmed by the court on April 13, 2015, requires the Debtors to make monthly payments to the Trustee in the amount of $568.00 for a period of fifty-seven (57) months. The Plan allows Home Credit a secured claim in the amount of $4,263.80, with interest accruing at 5.25%, to be paid through the Plan by the Trustee. The Plan also provides for a 3.4% distribution to unsecured creditors.

6. In the Motion to Modify, the Debtors seek to surrender the Collateral to Home Credit and reduce their payments to the Trustee from $568.00 to $465.00 for the remaining forty-

five (45) months of the Plan. The Debtors allege that due to numerous mechanical problems, the Collateral is no longer reliable transportation, and the estimated repair costs are not practical due to the age and condition of the Collateral. The Debtors propose that the surrender of the Collateral will fully satisfy Home Credit's secured claim, with any deficiency being allowed as a general unsecured claim.

7.     At the Hearing, the male Debtor, who is currently employed as a service consultant with Stevenson Toyota in Jacksonville, North Carolina and since 2007 has held similar positions with various automobile dealerships, testified about the condition of the Collateral. He stated that beginning in February, 2015, the Collateral's "Check Engine Light" began coming on intermittently until approximately June, 2015, when the Check Engine Light stayed on continuously. The Collateral was due for state inspection in June, 2015; however, the Collateral could not pass inspection with the Check Engine Light illuminated. The male Debtor contended that they cannot currently drive the Collateral due to a persistent dead battery, even after two battery replacements, and the inability to renew the Collateral's registration as a result of the failed state inspection. He described numerous other issues plaguing the Collateral, such as a faulty Exhaust Gas Recirculation ("EGR") valve,[1] pressure sensor, and front suspension, and he stated that he suspects there may be electrical problems contributing to the battery drain. The male Debtor provided a written estimate, which was prepared by him at Stevenson Toyota as a result of casual inquiry with mechanics he knows through his employment, detailing that it will cost approximately $1,242.21 to repair the problems with the Collateral. Upon cross examination, the male Debtor admitted that not all of these repairs are crucial to making the Collateral drivable, and

---

[1] The male Debtor previously replaced the EGR valve at Stevenson Toyota, only paying $106.83 for the part as he was not charged for labor costs. The male Debtor asserted that the EGR valve replacement did not turn off the Check Engine Light as hoped, which indicates that additional problems persist with the system.

Collateral's engine and transmission are performing properly. The estimate did not reflect any discounts the male Debtor might receive through his employment. The male Debtor also admitted that the Debtors have driven the Collateral almost 20,000 miles since it was purchased.

8.  "The provisions of a confirmed [Chapter 13] plan bind the debtor and each creditor . . . ." 11 U.S.C. § 1327(a). *See Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 148 (4th Cir. 2007) (quoting *Matter of Penrod*, 169 B.R. 910, 916 (Bankr. S.D. Ind. 1994)) ("A confirmed Chapter 13 plan is 'a new and binding contract, sanctioned by the court, between the debtors and their pre-confirmation creditor[s]'"). However, "[l]ike other contracts, a confirmed Chapter 13 plan is subject to modification." *Id.* (citing *Arnold v. Weast (In re Arnold)*, 869 F.2d 240, 241 (4th Cir. 1989)).

9.  "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to increase or reduce the amount of payments on claims of a particular class provided for by the plan . . . ." 11 U.S.C. § 1329(a). The United States Court of Appeals for the Fourth Circuit holds that "the doctrine of *res judicata* prevents modification of a confirmed plan pursuant to [§1329(a)] unless the party seeking modification demonstrates that the debtor experienced a 'substantial' and 'unanticipated' post-confirmation change in his financial condition." *Id.* at 149 (citing *Arnold*, 869 F.2d at 243). This doctrine "ensures that confirmation orders will be accorded the necessary degree of finality, preventing parties from seeking to modify plans when minor and anticipated changes in the debtor's financial condition take place." *Id.* As the Trustee pointed out at the Hearing, the Debtors provided no evidence of any change in their financial condition aside of facing expenses to repair the Collateral. The court must determine

4

whether these expenses are sufficiently substantial and unanticipated to warrant modification of the Plan.

10. Mechanical difficulties in a vehicle that is almost fifteen (15) years old and has high mileage are certainly foreseeable, and the court finds that future maintenance for the Collateral should have been anticipated at the time of the Plan's confirmation, especially by the male Debtor who is employed in the automotive service industry and who had noticed the Check Engine Light appear occasionally prior to confirmation. While the projected cost to repair the Collateral might create a short-term strain on the Debtors' budget, this moderate change in their financial condition is not significant enough to support a reduction in payments due under the fifty-seven (57) month Plan.

11. As for the Debtors' attempt to surrender the Collateral and bifurcate Home Credit's claim, the court agrees with the United States Court of Appeals for the Sixth Circuit's determination that 11 U.S.C. § 1329 only permits post-confirmation modification of the amount and timing of payments, not the total amount of a particular claim; therefore, a debtor cannot modify a plan by surrendering collateral and having any deficiency classified as an unsecured claim. *Chrysler Financial Corp. v. Nolan (In re Nolan)*, 232 F.2d 528, 532-33 (6th Cir. 2000) (holding that § 1329(a) allows for a reduction in the payment of claims but not for a reduction or modification of the claim itself). The United States Bankruptcy Court for the Middle District of North Carolina eloquently explained its adoption of *Nolan* as follows:

> Section 1327 provides the general rule that the plan is binding upon confirmation, while § 1329(a) provides limited exceptions to this rule. Section 1329(a) specifically enumerates the three purposes for which a plan may be modified, but does not include among those [modifying a plan in order to reclassify a secured claim]. Given the binding nature of confirmation, a secured creditor cannot move to modify the plan if the value of the collateral appreciates. This Court is not persuaded that Congress intended to allow a debtor to use § 1329 to essentially revalue collateral that has depreciated while the debtor had the benefit of possession

5

of that collateral, leaving the creditor with an unsecured claim. Furthermore, a debtor in this situation has other options, if necessary. A debtor can convert to Chapter 7, or dismiss the case and refile after the collateral has been repossessed by the creditor. The Court is unwilling to stretch the plain meaning of § 1329(a) under these circumstances.

*In re Miller*, 2002 WL 31115656 (Bankr. M.D.N.C. Apr. 19, 2002).[2]

12. The Debtors contend that several courts have rejected the *Nolan* court's strict interpretation of 11 U.S.C. 1329(a) and will allow a debtor to modify a Chapter 13 plan by surrendering depreciated collateral when such a modification meets the good faith requirement of 11 U.S.C. § 1325(a)(3), which is required for modification pursuant to 11 U.S.C. § 1329(b). The court recognizes this position but notes that most of these cases still require that a proposed modification be supported by a substantial and unanticipated change in financial condition, a finding the court has already rejected in this case.

13. On the Petition Date, the Debtors had owned the Collateral for only six (6) months, and the Debtors have added almost 20,000 miles to the Collateral since execution of the Note. The Debtors have received a benefit from their purchase, even with an estimated cost of $1,242.21 to repair the Collateral. While the mechanical troubles with the Collateral are unfortunate and may have caused the Collateral to depreciate, the Debtors are bound by the Plan, and 11 U.S.C. § 1329(a) does not permit a modification that would allow the Debtors to surrender the Collateral and convert any deficiency owed Home Credit to an unsecured claim with a mere 3.4% disbursement; now therefore,

---

[2] *Miller* and several other cases address 11 U.S.C. § 502(j) as a possible workaround of the requirements of 11 U.S.C. § 1329(a). This section provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." "According to these courts, when collateral is surrendered post confirmation [sic], the debtor may use § 502(j) to reduce the creditor's previously allowed secured claim to reflect the value of the surrendered collateral and to reclassify the remainder of creditor's claim as an unsecured deficiency under § 506(a)." *In re Boykin*, 428 B.R. 662, 667 (Bankr. D.S.C. 2009). *See also Miller*, 2002 WL 31115656 at *4-5; *In re Sellers*, 409 B.R. 820, 824 (Bankr. W.D. La. 2009); *In re Zeider*, 263 B.R. 114, 116-17 (Bankr. D. Ariz. 2001). However, reconsideration of Home Credit's claim pursuant to 11 U.S.C. § 502(j) is not properly before the court at this time.

IT IS ORDERED, ADJUDGED, AND DECREED that the Motion to Modify be, and hereby is, denied.

**END OF DOCUMENT**